UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VICTORIA SUE PETRY,

        Plaintiff,

v.                                      Case No.  8:11-cv-1781-T-35AEP

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, I recommend that the Commissioner's decision be affirmed.

**I.**

### A.    Procedural Background

Plaintiff filed an application for a period of disability and DIB (Tr. 152-59).   The Commissioner denied her claims both initially and upon reconsideration (Tr. 69-70, 85-87, 91-93).  Initially, Plaintiff filed an untimely request for an administrative hearing and the ALJ dismissed Plaintiff's claim on that basis (Tr. 71-79, 95).  Upon review, the Appeals Council remanded the case back to the ALJ for further proceedings after finding good cause for Plaintiff's delay in filing her request for hearing (Tr. 80-83).  Plaintiff then requested another administrative

hearing.  Per her request, the ALJ held a hearing at which Plaintiff and her husband appeared and testified (Tr. 38-68).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denying Plaintiff's claims for benefits (Tr. 16-37). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-5, 14).  Plaintiff then timely filed a complaint with this Court (Dkt. No. 1).  The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**B.      Factual Background and the ALJ's Decision**

Plaintiff, who was born on December 29, 1968, claims disability beginning August 30, 2008 (Tr. 152). She has a high school education (Tr. 42).  Her past relevant work experience includes work as a veterinary technician, order clerk, reservation clerk, and bingo caller (Tr. 43, 65).  She alleges disability due to depression, anxiety, alcoholism, esophageal spasms, high cholesterol, bipolar disorder, dizziness, and Tourette's Syndrome (Tr. 44-48, 210, 241, 262).

After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: depression, bipolar disorder, obesity, migraine headaches, previous knee surgery, and Tourette's Syndrome (Tr. 21-23).  Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. 23-26).  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform medium work, except that Plaintiff was limited to frequent climbing of ramps and stairs; frequent balancing; never climbing ladders, ropes, and scaffolds; occasional stooping, kneel crouching, and crawling; and must avoid concentrated

2

exposure to extreme cold, extreme heat, wetness, humidity, excessive noise, vibration, fumes, dusts, gases, and hazards (Tr. 26-30).  The ALJ further limited Plaintiff to unskilled work, consisting of simple, routine, and repetitive tasks with only occasional interaction with coworkers and the public (*id.*).  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence and limiting effects of her symptoms were not credible to the extent they were inconsistent with the RFC assessment (Tr. 28).

Considering her noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform her past relevant work (Tr. 30).  Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a hand packager, order selector, and machine tender (Tr. 31-32, 66-67).  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 32).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable

3

clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Subpart P; and whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. § 404.1520(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the

Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### III.

Plaintiff argues here that the Commissioner's decision should be reversed because (1) the ALJ failed to afford the proper weight to the opinions of Plaintiff's medical sources, (2) the ALJ failed to make a proper credibility determination, (3) the ALJ failed to include all of Plaintiff's limitations in the RFC finding, and (4) the Appeals Council failed to reverse the ALJ's decision despite new and material evidence supporting a finding of disability. For the reasons that follow, the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

A.    **Medical Opinions**

Plaintiff first argues that the ALJ erred by failing to afford the proper weight to the opinions of Dr. Kenneth Pages and Dr. Stephen Russell and, instead, substituted his own opinion for that of the medical sources.  In assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization.  20 C.F.R. § 404.1527(c).  For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive.  20 C.F.R. § 404.1527(c)(3).  Further, the more consistent the medical opinion is with the record as a whole, the more weight that opinion will receive.  20 C.F.R. § 404.1527(c)(4).  Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004).  Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records.  *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004).  In fact, the ALJ may reject any opinion when it supports a contrary conclusion.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

6

Here, Plaintiff began treatment with Dr. Pages in October 2007 for her mental health impairments (Tr. 340-56, 412-15, 453-64, 549-60).  In January 2009, Dr. Pages completed a professional source statement in which he noted that Plaintiff had a depressed or irritable mood, anhedonia, appetite disturbance, sleep disturbance, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, hyperactivity, pressure of speech, and inflated self-esteem (Tr. 446).  Dr. Pages noted that Plaintiff had bipolar syndrome with a history of episodic periods and had several marked functional limitations, including in maintaining social functioning and in maintaining concentration, persistence, or pace (Tr. 446-48).  He opined that Plaintiff's impairments would likely produce good days and bad days and, as a result, Plaintiff would likely be absent more than four days per month due to her impairments (Tr. 448).

Similarly, in January 2009, Dr. Russell, who had treated Plaintiff for her mental health impairments since September 2008, completed a mental residual functional capacity assessment (Tr. 449-52).  Dr. Russell opined that Plaintiff would be absent more than three times per month due to her mental impairments, would have marked limitations in her capacity to sustain concentration and attention due to her depressive symptoms, and would have marked difficulty in sustaining normal workplace stamina and flexibility in changing work conditions on demand (Tr. 449, 451).  Further, Dr. Russell noted that Plaintiff had marked deficiencies in concentration, persistence, and pace resulting in failure to complete tasks in a timely manner and had marked episodes of deterioration or decompensation in work or work-like settings that would cause Plaintiff to withdraw from that situation or to experience exacerbation of her signs and symptoms (Tr. 452).

In rendering his decision, the ALJ considered and discussed the opinions of both Dr. Pages and Dr. Russell (Tr. 24-26). After consideration, the ALJ afforded little weight to the opinions of Dr. Pages and Dr. Russell finding that their opinions seriously conflicted with their own treatment notes and the rest of the medical evidence of record (Tr. 25). Indeed, Dr. Pages's treatment notes from 2007 and 2008 illustrate continuing progress throughout the course of Plaintiff's treatment, with Plaintiff reporting she had been doing fairly well, and Dr. Pages noting Plaintiff had experienced significant improvement, was doing better, looked good, and had good insight and judgment (Tr. 340-56, 412-15). During one examination, Dr. Pages attributed most of Plaintiff's anxiety to her alcohol usage (Tr. 354). Subsequently, in 2009 treatment notes, Dr. Pages indicated that Plaintiff continued to report doing better and fairly well but also reported becoming irritable, overreacting, and getting agitated and anxious (Tr. 453-64). In May 2009, Plaintiff suffered a setback and had to be hospitalized and placed under a Baker Act after she had been drinking and having increased symptoms (Tr. 454-57). Following her brief hospitalization, however, Plaintiff reported gradual improvement throughout 2009 and 2010 and even reported that she was seriously doing okay in January 2010 (Tr. 453-64, 549-60).

Dr. Russell's treatment notes show similar improvement and continued progress regarding Plaintiff's mental impairments (Tr. 372-75, 539-48). During an initial visit with Dr. Russell in September 2008, Plaintiff demonstrated a stable mood, did not exhibit any signs of psychosis, and denied having any thoughts of self-harm (Tr. 372-73). Upon follow-up appointments that month, Plaintiff denied feelings of hopelessness; denied any thought, intent, or plan toward destructiveness; demonstrated stable mood; and only complained of frustration, low energy, and

8

lack of interest (Tr. 374-75). From June 2009 through October 2010, although Plaintiff stated she had some difficulties with her mood and anxiety on a couple occasions, Plaintiff generally reported that her mood had been stable, denied any significant difficulties with depression or intense anxiety, indicated that she had been doing well, demonstrated an absence of depression, continued to receive support from her husband, and showed progress (Tr. 539-48). As the foregoing demonstrates, the doctors' opinions as to the severity of Plaintiff's limitations greatly exceeds their findings upon examination of Plaintiff. Accordingly, the ALJ properly found the opinions unpersuasive and afforded them less significant weight. *See Phillips*, 357 F.3d at 1241.

In affording the opinions of Drs. Pages and Russell little weight, the ALJ also considered the other medical evidence of record and found that the opinions of Drs. Pages and Russell conflicted with that evidence as well. Namely, both state agency psychological consultants found that Plaintiff had less severe restrictions than those set forth by either Dr. Pages or Dr. Russell (Tr. 386-99, 400-403, 416-29, 430-33). Upon a thorough review of the medical evidence of record, the state agency psychological consultants each found that Plaintiff had only moderate limitations in maintaining social functioning and in maintaining concentration, persistence, or pace and mild limitations in her activities of daily living, with no episodes of decompensation of extended duration (Tr. 396, 426). Indeed, based on his review of the record, one state agency consultant found that Plaintiff could understand and recall simple to moderately complex instructions, follow and execute simple to moderately complex directives, persist at simple and routine tasks for a regular workday at an appropriate pace and sustain that level over weeks and months, cooperate on routine tasks, accept direction and general feedback, arrange transportation

and avoid hazards, adapt to most changes and task demands involved in an unskilled work environment and would work best in an environment in which she had limited contact with the public (Tr. 432).  The other state agency psychological consultant found that Plaintiff appeared able to initiate and complete routine tasks with periods of mild to moderate concentration deficits associated with mood symptoms; Plaintiff performed household tasks, ventured out independently, drove, shopped, used a computer, and managed finances; clinical data reflected improvement with no suicidal ideations or mood lability; Plaintiff had moderate limitations with social functioning; Plaintiff had a history of difficulty getting along with coworkers so needed to avoid interactions and would benefit from reduced social demands in the workplace setting; and Plaintiff was able to avoid hazards and adapt to routine changes as needed (Tr. 402).  The state agency consultants did not find that Plaintiff would need to be absent from work for an extended amount of time due to her mental impairments or that she was more than moderately impaired.

Given the treatment notes of Dr. Pages and Dr. Russell as well as the other evidence of record, the ALJ appropriately afforded the opinions expressed by Dr. Pages and by Dr. Russell in their physician source statement and mental residual capacity forms little weight.  As the ALJ aptly noted, neither the doctors' own treatment notes or the medical evidence of record supported their opinions as to the degree of Plaintiff's limitations.  Accordingly, the ALJ applied the proper legal standards and his decision is supported by substantial evidence.[1]

---

[1] In addition, the ALJ discussed the possibility that doctors may express opinions that conflict with their own notes in an effort to assist a patient with whom the doctor sympathizes or because a patient is insistent or demanding (Tr. 26).  The ALJ went on to note that it was difficult to confirm the presence of such motives, but it was likely where, as here, the medical opinion departed substantially from the evidence of record (*id.*).  Though the ALJ considered

B.      **Subjective Complaints and Credibility**

Plaintiff next argues that the ALJ improperly discounted her subjective complaints and made an erroneous credibility finding.   In social security disability cases, credibility determinations fall within the province of the ALJ.  *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).   Typically, the ALJ makes credibility determinations regarding Plaintiff's subjective complaints and must provide specific reasons for the credibility finding.  *Holt v. Sullivan*, 921 F.2d 1221,1223 (11th Cir. 1991); Social Security Ruling 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996).   In addition to the objective evidence of record, the Commissioner must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence.  *See* 20 C.F.R. § 404.1529.   To establish a disability based on testimony of pain and other subjective symptoms, the claimant must show evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or (2) that the objectively determined medical condition can reasonably be expected to give rise to the alleged symptoms.  *Wilson*, 284 F.3d at 1225; *Foote v. Chater,* 67 F.3d 1553, 1560-61 (11th Cir. 1995); *see* 20 C.F.R. § 404.1529.  When the ALJ discredits the claimant's subjective testimony, the ALJ

────────────────────

those possibilities, they were not the sole basis for the ALJ's finding that the opinions of Drs. Pages and Russell were not particularly persuasive.  Instead, the ALJ focused on the lack of support for the opinions in the treatment notes and the conflict with the other evidence of record.  *See Kelly v. Comm'r of Soc. Sec.*, 401 Fed. App'x 403, 407 n.6 (11th Cir. 2010) ("Although the ALJ observed that pressure from or sympathy for a patient could lead a doctor to provide an opinion on a patient's ability to work, the ALJ acknowledged that it was 'difficult to confirm the presence of such motives,' and ultimately concluded that [the doctor's] opinion was less persuasive because it lacked evidentiary support and in fact was inconsistent with other evidence.").

must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225; *Foote,* 67 F.3d at 1561-62. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1562.

During the hearing, Plaintiff testified that she had problems communicating and speaking, Tourette's Syndrome, neurological problems, esophageal spasms and chest pain causing her to go to the hospital two to three times per year, panic attacks, migraines, bipolar disorder, a substance abuse problem, and lacked the physical and mental capability to hold onto animals while employed as a veterinary technician (Tr. 44-48). She stated that she could only stand for fifteen minutes at a time, could walk for thirty minutes in a grocery store, could sit for an hour, and could lift five pounds occasionally during an eight-hour day but could not frequently lift any amount of weight during an eight-hour day (Tr. 48-49). Plaintiff also said that she had side effects from her medication, including sleepiness, dry mouth, frequent trips to the restroom, weight gain, and getting overheated (Tr. 55-56). Following that, Plaintiff's husband testified as to Plaintiff's impairments and limitations, stating that she suffered from esophageal spasms, prior knee surgeries, headaches, a tick and twitch, suicidal tendencies and panic attacks and, among other things, had chest pain, difficulty standing and walking, and an inability do anything given her symptoms (Tr. 57-61). He elaborated that Plaintiff had debilitating esophageal spasms about once a month, her knee surgeries slowed her down and limited her ability to walk and stand, she could only stand for thirty minutes, she could walk about half of a block before needing to sit down, she had several very bad headaches per week that required her to lay in bed or on the couch for up to several hours, she stayed in bed two to four days per month, she had difficulty sleeping

12

at night, she sometimes had suicidal thoughts, and she had problems focusing and concentrating (*id.*).

In satisfying the pain standard, the ALJ considered Plaintiff's subjective complaints as well as the objective medical evidence of record and found Plaintiff's complaints not entirely supported by the record (Tr. 28-29). Particularly, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent they conflicted with the RFC (Tr. 28). In doing so, the ALJ explained that, even though Plaintiff was fairly persuasive as to her description of her mental health issues, the medical evidence of record did not support the severity of her subjective complaints (*id.*). As the ALJ correctly noted, the record showed the presence of mental health issues and moderately severe functional limitations relating to Plaintiff's depression and bipolar disorder but also indicated that her condition improved over time and that she frequently reported that she was okay or doing well to her medical sources (Tr. 28, 340-56, 372-75, 386-99, 400-403, 412-15, 416-29, 430-33, 453-64, 539-48, 549-60). As discussed more fully above, the treatment notes of both Dr. Pages and Dr. Russell showed Plaintiff demonstrated gradual yet continued improvement and progress as to her mental impairments over the course of treatment, with only a brief deterioration occurring relative to alcohol consumption (Tr. 22, 340-56, 372-75, 412-15, 453-64, 539-48, 549-60). Additionally, the state agency psychological consultants found that Plaintiff had only mild to moderate limitations as a result of her mental impairments (Tr. 386-99, 400-403, 416-29, 430-33). Accordingly, the descriptions of the purported limitations Plaintiff

13

and her husband offered at the administrative hearing conflicted with and were more severe than the complaints she made to her medical sources throughout her course of treatment. The ALJ therefore found that the inconsistencies suggested that the information Plaintiff provided was generally not credible. Given the record, the ALJ appropriately discredited the subjective complaints of Plaintiff and her husband's testimony as to the severity of Plaintiff's symptoms relating to her mental impairments.

Similarly, as to her subjective physical complaints, the ALJ found those complaints not credible. Indeed, Plaintiff asserted severe functional limitations attributable to her Tourette's Syndrome, headaches, knee pain, and gastroesophageal reflux and esophageal spasms, yet the record did not demonstrate a history of treatment or hospitalizations for those issues or a history of consistent, persuasive descriptions of the subjective complaints to her medical sources (Tr. 29). As to the purported limitations from Plaintiff's Tourette's Syndrome, the ALJ explained that even though a neurologist diagnosed Plaintiff with Tourette's Syndrome, her treating psychiatrist Dr. Pages questioned that diagnosis as he had never seen or heard a tick throughout his course of treatment of Plaintiff (Tr. 442-44, 551). Moreover, although she had received a diagnosis of Tourette's Syndrome, Plaintiff had never sought any further treatment with respect to it. Accordingly, he found Plaintiff's complaints related to Tourette's Syndrome not credible.[2]

---

[2] Though the ALJ mentioned that Plaintiff did not demonstrate any signs or symptoms of Tourette's Syndrome at the hearing, the ALJ did not err in basing his credibility finding in part on that fact as it did not constitute the sole basis for discrediting Plaintiff's subjective complaints. *See Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir. 1985) ("The ALJ, however, must not reject the objective medical evidence and claimant's testimony solely upon his observation during the hearing; rather, the ALJ may consider a claimant's demeanor among other criteria in making credibility determinations.").

The ALJ also considered Plaintiff's complaints regarding her obesity, headaches, knee pain, gastroesophageal reflux disease, and esophageal spasms and found them similarly not credible as the medical evidence of record did not support the intensity, persistence, or limiting effects of such impairments (Tr. 28-30). For example, with respect to Plaintiff's gastroesophageal reflux disease and esophageal spasms, the ALJ correctly noted that Plaintiff had not sought consistent treatment over the years and had not gone to the emergency room for treatment of those impairments as she had alleged (Tr. 29, 44-45, 308, 477, 524-35). Further, as to Plaintiff's headaches and knee pain, the record demonstrates that Plaintiff's migraines were controlled to a degree by medication and that she did not seek out treatment for debilitating knee pain (Tr. 357-71, 471-72, 536-37). Furthermore, after reviewing Plaintiff's medical records, the state agency medical consultants found that Plaintiff had no exertional limitations but included environmental and postural limitations, each of which the ALJ incorporated into the RFC, to account for the limitations from Plaintiff's headaches, gastroesophageal reflux disease, esophageal spasms, and medications (Tr. 26-30, 404-11, 434-41). As one state agency medical consultant stated, some of Plaintiff's allegations and symptoms appeared disproportionate to the expected severity and duration expected on the basis of Plaintiff's medically determinable impairments, and, thus, he reduced the RFC to reflect the work capacity that remained with the appropriate restrictions to compensate for the impairments and associated symptoms that could be medically determined (Tr. 409, 439).

Given the foregoing, the ALJ adequately considered all of Plaintiff's subjective mental and physical complaints. After reviewing the record, including the testimony of Plaintiff and her

15

husband, the ALJ made an appropriate credibility determination, properly discounted Plaintiff's subjective complaints, provided adequate reasons for doing so, and his decision is supported by substantial evidence.

### C.   RFC

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work.  *See* 20 C.F.R. § 404.1520(a)(4)(iv).  To determine a claimant's RFC, an ALJ makes an assessment based on all of the relevant evidence of record as to what a claimant can do in a work setting despite any limitations caused by the claimant's impairments and related symptoms.  20 C.F.R. § 404.1545(a)(1).  In this instance, when determining Plaintiff's RFC, the ALJ considered all of Plaintiff's impairments in depth and incorporated the limitations the ALJ found credible into Plaintiff's RFC (Tr. 26-30).  Namely, the ALJ limited Plaintiff to medium, unskilled work with only frequent climbing of ramps and stairs; frequent balancing; no climbing of ladders, ropes, and scaffolds; occasional stooping, kneel crouching, and crawling; and no concentrated exposure to extreme cold, extreme heat, wetness, humidity, excessive noise, vibration, fumes, dusts, gases, and hazards (*id.*).  To account for Plaintiff's mental impairments, the ALJ limited Plaintiff to unskilled work, with a SVP of 1 or 2, which consisted of simple, routine, and repetitive tasks with only occasional interaction with coworkers and the public (Tr. 30).  Further, given the effects of Plaintiff's obesity, past knee surgery, and Tourette's Syndrome, the ALJ limited Plaintiff to medium work with additional limitations for frequent climbing of ramps and stairs; frequent balancing; no climbing ladders, ropes, and scaffolds; and occasional stooping, kneel crouching, and crawling (*id.*).  In addition,

16

the ALJ found that Plaintiff must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, excessive noise, vibration, fumes, dusts, gases, and hazards to account for limitations Plaintiff had on account of her migraines (*id.*). The ALJ provided an extensive explanation for his findings and, upon review of all the evidence, set forth a RFC that accounted for the complaints and limitations the ALJ found credible and supported by the objective medical evidence of record. Indeed, as explained more fully above, the record supports such a finding. Accordingly, the ALJ applied the appropriate legal standards and his decision is supported by substantial evidence.

### D.    Appeals Council Review

Finally, Plaintiff argues that the Appeals Council should have reversed the ALJ's decision given the new and material evidence presented by Plaintiff. Unfortunately, Plaintiff fails to explain how the new evidence would have changed the outcome and fails to demonstrate that the Appeals Council did not consider the evidence. Rather, Plaintiff simply contends that the Appeals Council should have reversed the ALJ's decision simply because she submitted new and material evidence.

When a claimant appeals an ALJ's decision to the Appeals Council, "[t]he Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007)(quoting 20 C.F.R. § 404.970(b)). Thereafter, review by a federal district court requires consideration of evidence not initially submitted to the administrative law judge but

considered by the Appeals Council in order to determine whether that new evidence renders the denial of benefits erroneous. *Id.* at 1258, 1262. Here, after the ALJ rendered his decision, Plaintiff submitted a letter from Plaintiff's former counsel with Plaintiff's contentions of error; treatment records from Dr. Shifa Malik for the period from May 11, 2009 to April 7, 2011; and treatment records from Dr. Malik, Dr. Shafaq Hussain, and Florida Medical Clinic for the period from January 9, 2007 to February 23, 2011 (Tr. 4-5, 292-96, 562-606, 608-54). Upon consideration of the materials, the Appeals Council denied review finding no basis for changing the ALJ's decision (Tr. 1-5).

The Appeals Council's decision to deny review does not constitute error. First, some of the evidence submitted to the Appeals Council was not chronologically relevant as it did not relate to the period on or before the date of the ALJ's hearing decision (Tr. 577-87). 20 C.F.R. § 404.970(b). Second, as the Commissioner points out, much of the evidence submitted to the Appeals Council proved duplicative of evidence previously submitted to the ALJ (*see* Tr. 357, 371, 482-85, 562-64, 634, 638-39, 651-54). The remainder of the evidence submitted to the Appeals Council did not demonstrate a basis upon which the Appeals Council could find the ALJ's decision erroneous. For instance, the records submitted to the Appeals Council included diagnostic testing that revealed that Plaintiff had no significant issues with her bladder, kidneys, brain, chest, breasts, heart, or shoulder (Tr. 577-82, 592-93, 601, 606, 614, 619, 634). The records further revealed that Plaintiff repeatedly demonstrated a euthymic mood and normal affect upon examination (Tr. 600, 604, 609, 622, 624, 628). Upon review, the Appeals Council found that the new evidence submitted by Plaintiff to it did not render the action, findings, or conclusion

18

of the ALJ contrary to the weight of the evidence of record.  *See Ingram*,  496 F.3d at 1261.

Given the lack of material new evidence which would render the ALJ's decision erroneous, the

Appeals Council appropriately denied review of the ALJ's decision.

### IV.

Accordingly, for the foregoing reasons, it is

RECOMMENDED:

1.  The decision of the Commissioner be AFFIRMED.

2.  The Clerk be directed to enter final judgment in favor of the Commissioner and close

the case.

IT IS SO REPORTED in Tampa, Florida, on this 5th day of February, 2013.

ANTHONY E. PORCELLI
United States Magistrate Judge

19

## **NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*

Copies furnished to:

Hon. Mary S. Scriven

Counsel of Record

20